MAKAR, J.
The appeal in this Engle-progeny[1] wrongful death action arises from a jury award of damages to the Estate of Barbara Jewett (“Estate”) due to her death from chronic obstructive pulmonary disease (“COPD”). The defendants, R.J. Reynolds Tobacco Company and Lorillard Tobacco Company (“Tobacco”[2]) raise three issues on appeal, two of which we summarily affirm.[3]
The third issue is whether the trial court erred in refusing to give a jury instruction proposed by Tobacco regarding its statute of limitations defense, a decision we review for abuse of discretion. Citizens Prop. Ins. Corp. v. Hamilton, 43 So.3d 746, 753 (Fla. 1st DCA 2010). A trial court abuses its discretion when it fails to give a proposed instruction that is (1) an accurate statement of the law, (2) supported by the facts of the case, and (3) necessary for the jury to properly resolve the issues, so long as the subject of the proposed instruction is not covered in other instructions given to the jury and the failure to instruct is shown to be prejudicial. Mills v. State, 949 So.2d 1186, 1188 (Fla. 1st DCA 2007); Golian v. Wollschlager, 893 So.2d 666, 667 (Fla. 1st DCA 2005); Robinson v. Gerard, 611 So.2d 605, 607 (Fla. 1st DCA 1993).
Because jury instructions are contextual, some background is necessary for the challenged instruction, which relates to whether a diagnosis of COPD was required for Jewett to have known she had been injured by Tobacco’s products. A key factual question for determination by the jury was when Mrs. Jewett’s COPD first manifested itself. She was diagnosed with COPD in 1995, but had been suffering from symptoms associated with the disease since as early as 1979. Tobacco introduced significant evidence tending to show Mrs. Jewett should reasonably have been aware that she had a smoking-related ill *468 ness prior to May 5, 1990; Estate produced significant evidence to the contrary.
The parties disputed how the jury was to be instructed on resolving when Mrs. Jewett knew or should have known she had COPD and the legal effect of a medical diagnosis of COPD. The trial court ultimately used standard instruction 402.14(a), charging the jury as follows:
The first issue for your consideration is Defendants’ statute of limitations defense. In order to prevail on that defense, Defendants must prove by the greater weight of the evidence that Barbara Jewett knew, or by the exercise of reasonable care should have known, before May 5, 1990, that she had COPD and that there was a reasonable possibility that her COPD was caused by cigarette smoking.
If the greater weight of the evidence does not support Defendants’ position on this issue, your verdict should be for Plaintiff on this issue. However, if the greater weight of the evidence does support Defendants’ position on this issue, your verdict should be for Defendants.
See Fla. Standard Jury Instructions in Civil Cases § 402.14(a) (2010). The trial court declined to give Tobacco’s proposed special jury instruction — to be inserted between the first and second paragraphs of the standard instruction — which stated:
Defendants do not need to prove that Ms. Jewett was actually diagnosed with COPD prior to May 5, 1990, in order to prevail on this defense. For purposes of this defense, the critical event is not when her COPD was actually diagnosed by a physician, but when her COPD first manifested itself.
Ms. Jewett knew or should have known that there was a reasonable possibility that her COPD was caused by cigarette smoking if her COPD manifested itself to her in a way that supplied some evidence of a causal relationship to cigarette smoking. In making that determination, you may properly consider what Ms. Jewett knew prior to May 5, 1990, concerning the health risks of cigarettes.
The trial court noted that the legal principles in these two paragraphs accurately stated the caselaw on the topic, but was concerned that no reported appellate case had yet compelled the instruction’s use or held it erroneous to not give it. The trial court chose to give only the standard instruction and to allow the trial attorneys to argue their respective positions to the jury about the ramifications of a physician’s diagnosis in this case.
The trial judge’s reticence to give a “non-standard” jury instruction is reflective of a cautious approach that most trial judges exhibit. One reason is that “[s]tan-dard jury instructions give peace of mind to the [trial] judge, causing less concern about fashioning an instruction that accurately reflects the current law.” Ralph Artigliere, How to Write and Use Jury Instructions 8 (2d ed.2000). This predisposition against non-standard instructions is understandable. Judges are human; none likes to be reversed. Taking the lower-risk approach, as the trial court did here by giving only the standard instruction, is not unreasonable when judged by principles of risk aversion. Id. (“[T]o avoid error and problems of variance from [the standard instruction], some judges ... hesitate to deviate from the standard instructions.”).
Because the law continually evolves, however, so too must jury instructions, particularly those that are needed to help juries comprehend and decide specific cases. This evolution often occurs at a pace faster than the standard jury instructions are produced, a process that empha *469 sizes accuracy over speed.[4] When nonstandard instructions are proposed, trial courts face an analytical task similar in kind to that performed by the thirty-two member Florida Standard Jury Instructions Committee — without the luxury of time. To facilitate new legal developments, trial judges should not cast aside their naturally cautionary approach, but may need to step out of their comfort zones from time-to-time where legally-accurate and factually-relevant non-standard instructions are proposed that supplement standard instructions in a way that enhances jury understanding of the law.[5] We conclude this is such a case, one where the three-part jury instruction test is met.
The first prong of the test, whether the proposed charge accurately reflects applicable law, is clearly met. The first paragraph of the proposed instruction closely tracks language from the Engle decision, which held that the “critical event is not when an illness was actually diagnosed by a physician, but when the disease or condition first manifested itself.” 945 So.2d at 1276. Similarly, in Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 982, 938 (Fla.2000), a key question of fact for the jury’s resolution was whether the plaintiff “knew or should have known, on [either of two dates outside of the statute of limitations], that the effects of smoking cigarettes manifested themselves to [the plaintiff] in a way which supplied some evidence of a causal relationship to the cigarettes.” This language from Carter closely matches the language in the second proposed paragraph. In fact, the trial court recognized the proposed instruction accurately states the law.[6]
The second prong requires that the proposed instruction be supported by facts to be established at trial. Here, a major factual question for the jury was whether Mrs. Jewett knew, or reasonably should have known, that she was affected by COPD before 1990; the instruction was supported by the facts as taken in the light most favorable to Tobacco. Gray v. Adams Grading & Tracking, Inc., 956 So.2d 505, 507 (Fla. 1st DCA 2007). Like the first prong, the second prong is clearly met.
The third and final prong requires prejudice, which can be established by showing that the proposed instruction is necessary for the jury to properly resolve the factual questions. In determining whether a particular instruction is necessary, “the proper test is not whether the jury was actually misled, but whether the jury might reasonably have been misled” by the absence of the proposed instructions. Snedegar v. Amone, 532 So.2d 717, 719 (Fla. 4th DCA 1988). Absent the pro *470 posed instruction and its accurate statement of applicable law, the jury was left to guess whether “the exercise of reasonable care” could include physical manifestations of COPD before a formal diagnosis of COPD is made. Given the legal principles expressed in Engle and Carter, which are reflected in the proposed instruction, the jury should not have been left unguided in making this legal determination; the standard jury instruction did not adequately cover the legal principles explained in the proposed instructions, leaving the jury to speculate unnecessarily. Indeed, the jury expressed its confusion by asking the trial court for an explanation of a phrase— “exercise of reasonable care” — that appears only in the standard instruction that was given. The additional legal guidance in the proposed instruction would have been of assistance in light of the jury’s apparent need to clarify this aspect of the standard instruction.
Under the circumstances, the failure to give the proposed jury instruction might have reasonably misled the jury, thereby warranting reversal. We note that the requested instruction directly relates to the dispositive issue of whether the statute of limitations had run, an issue the jury had confusion in resolving. The jury’s specific inquiry to the trial judge about the standard instruction was: “Can we have a more concise explanation of the term ‘exercise of reasonable care’?” Whether Mrs. Jewett “knew, or by the exercise of reasonable care should have known” before May 5, 1990 that she had COPD that may have been caused by cigarette smoking was central to the jury’s inquiry. An accurate statement of the law regarding whether a formal diagnosis of COPD is required to meet the “reasonable care” standard would have directly informed the jury’s inquiry on the only topic that jurors did not comprehend.
We do not know with certainty what specific discussions the jurors had among themselves about the issue of when Mrs. Jewett first knew or should have known of her COPD. We know with certainty, however, that they had discussions on this topic and were sufficiently confused to ask for a “more concise explanation” of what amounts to the “exercise of reasonable care” as to Mrs. Jewett’s discovery of her COPD. We have little difficulty envisioning some jurors expressing that the date of her formal medical diagnosis should be all that matters, while others might be convinced that she knew or reasonably should have known of her COPD long before that time, thereby precipitating the jurors’ request for clarification on this dispositive issue. Had the jury been told that “the critical event is not when her COPD was actually diagnosed by a physician, but when her COPD first manifested itself’— as the law provides and the proposed instruction states — its confusion might reasonably have been reduced or eliminated.
The Estate argues Tobacco had ample opportunity to explain during closing arguments that the statute of limitations began running not when Mrs. Jewett was diagnosed with COPD, but when she knew or reasonably should have known that smoking was causing the disease. This argument overlooks the purpose of closing argument, which “is to help the jury understand the issues in a case by ‘applying the evidence to the law applicable to the case.’ ” Murphy v. Int’l Robotic Sys., Inc., 766 So.2d 1010, 1028 (Fla.2000) (quoting Hill v. State, 515 So.2d 176, 178 (Fla.1987)). Leaving it to the parties’ at torneys to explain to the jury in closing argument what legal principles apply is an inadequate substitute for an accurate, relevant, and complementary instruction that contains legal principles not covered in a standard instruction. It also overlooks the *471 importance of providing a jury with more, rather than less, accurate information about the applicable law so it can properly resolve factual questions. A standard instruction by itself, without modification or supplementation, will often be a permissible means of instructing a jury; it may be inadequate, however, where the law in a particular context, such as the Engle-prog-eny line of cases, has developed in a way that makes additional instructions necessary for juries to more readily fulfill their responsibilities in applying relevant law.
Tobacco argues that, because the jurors asked about the meaning of the phrase “reasonable care” in the standard jury instruction at issue, the jury’s confusion makes prejudice obvious. While we independently find sufficient prejudice to warrant reversal, we note that Florida appellate courts have found prejudice, and reversed the failure to give requested instructions, when juries demonstrate an inability to properly resolve factual disputes by asking questions during deliberations that relate to the topic of proposed instructions. See Schweikert v. Palm Beach Speedway, Inc., 100 So.2d 804 (Fla.1958); Nason v. Shafranski, 33 So.3d 117 (Fla. 4th DCA 2010); Cruz v. Plasencia, 778 So.2d 458 (Fla. 3d DCA 2001); City of Sunrise v. Bradshaw, 470 So.2d 804 (Fla. 4th DCA 1985). For example, in Nason the Fourth District found that a “jury’s confusion was apparent from the note it sent to the judge during deliberations” that “sought guidance on how to handle the defendants’ evidence” of a physician’s negligence. Nason, 33 So.3d at 122. In reversing, the appellate court held that the trial judge should have given the requested instruction that could have dispelled the apparent jury confusion.
In a similar case, Bradshaw, the Fourth District addressed a jury which had twice asked for clarification on the definition of malicious prosecution. 470 So.2d at 806. Though the majority found no abuse of discretion because the instruction was not requested, as the dissent noted, the failure to give the instruction “obviously confused” the jury and, but for the preservation issue, would have resulted in reversal. Id. at 807 (Letts, J., dissenting). Further, the Florida Supreme Court reversed a trial court’s failure to give a requested instruction, despite the imperfections in the proposed instruction, in Schweikert, 100 So.2d at 805-06. There, also, a question from the jury indicated confusion that would have been resolved had the proposed instruction been corrected and given. Id.
In Cruz, the Third District held that the failure to give a proposed concurrent cause instruction was prejudicial, explaining that the jury had made inquiry about the topic to the trial judge during its deliberations. Notably, the appellate court discounted the notion that trial counsel’s explanation of the topic in closing argument ameliorated the lack of the instruction. Cruz, 778 So.2d at 462. Indeed, the Third District highlighted that the jury’s inquiry came despite the explanation of concurrent cause by trial counsel, making clear that the “jury was still having difficulty in understanding” how the concept applied to the evidence presented at trial. Id. at 462. Given the potentially dispositive nature of the statute of limitations defense, and the difficulty the jury apparently had in applying the standard instruction without further clarification, the failure to give the requested instruction was prejudicial, as the jury might reasonably have been misled by the failure to give the proposed instruction. The jury’s inquiry reflects confusion and the proposed instruction might reasonably have assisted the jury in reducing or eliminating that confusion. Under these circumstances, we conclude *472 that the failure to give the instruction was prejudicial because the instruction was necessary for the jury to properly resolve the factual questions in the case.
In concluding, we note that the trial court’s reason for not giving the proposed instruction was not that it was legally incorrect or that it was unsupported by the facts of the case. Instead, the concern expressed in the charge conference was that by giving the proposed instruction, the trial court would effectively be “telling them that they should decide for the defense based on the facts of this case.” We respectfully disagree. That significant evidence exists that might bolster the statute of limitations defense, and that the proposed instruction might lead a rational jury to accept that defense, are insufficient reasons for rejecting a legally-accurate and factually-relevant instruction that eliminates or reduces jury confusion, particularly where both sides presented significant evidence in support of their positions on the issue.
Because the proposed instructions at issue should have been given to the jury, we hold the trial court erred in fading to do so and remand for a new trial.
AFFIRMED in part, REVERSED in part, and REMANDED.
DAVIS, J., concurs.
LEWIS, J., dissents with opinion.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).

. The supreme court's opinion in Engle used “Tobacco” as shorthand for all the major domestic cigarette companies and two tobacco industry organizations. Id. at 1256 & n. 3. We use "Tobacco” here as shorthand for the two appellants only, who were among the defendants in Engle.

. We affirm the trial court's denial of Tobacco's motion for a directed verdict on its statute of limitations defense; the evidence — considered in the light most favorable to Estate— could have led a reasonable jury to determine that Mrs. Jewett's cause of action accrued after May 5, 1990, i.e., within four years of the filing of the class action in Engle. Likewise, we affirm the trial court's use of Engle findings on the authority of R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060 (Fla. 1st DCA 2010).

.Standard jury instructions, while neither binding nor perfect, are neutral and reliable because they represent the product of laborious and nuanced discussions among highly experienced and knowledgeable members of the bench and bar; proposed instructions are then published for public comment; and oftentimes, oral argument is held in the Florida Supreme Court, which reviews proposed instructions for possible adoption. See generally Larry Stewart, The Rebirth of the Florida Standard Jury Instructions, 84 Fla. B J., May 2010, at 12 (discussing the process for newly-adopted and formatted standard instructions that use plain English).

. As one commentator has noted, "[a]t the most fundamental level, jurors must understand the law and the issues for the right to trial by jury to be preserved.” Stewart, supra note 4, at 13.

. We do not hold that the proposed instructions are the best statements of the law; our inquiry under this prong focuses on accuracy alone. The parties may, on remand, propose other instructions that accurately reflect the law that could likewise be deemed proper.