[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10447
_____

D.C. Docket No. 3:09-cv-11228-WGY-HTS

WILLIAM HECHT,

Plaintiff - Appellant,

versus

R.J. REYNOLDS TOBACCO COMPANY,
individually and as successor by merger to the Brown and
Williamson Tobacco Corporation and the American Tobacco Company
PHILIP MORRIS USA, INC.,

Defendants- Appellees,

LORILLARD TOBACCO COMPANY, et al,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 25, 2017)

Before TJOFLAT and ROSENBAUM, Circuit Judges, and REEVES,[*] District Judge.

PER CURIAM:

Plaintiff-Appellant William Hecht appeals the jury verdict and judgment in this *Engle*-progeny case.[1] After developing chronic obstructive pulmonary disease ("COPD"), Hecht brought a products liability action against Defendant-Appellee R.J. Reynolds Tobacco Company ("RJR") and other cigarette manufacturers,[2] claiming they negligently and fraudulently concealed information about the

---

[*] Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation

[1] In May 1994, six named individuals filed a class-action complaint against several major tobacco companies, including Defendant-Appellee R.J. Reynolds Tobacco Company, seeking damages for alleged injuries from smoking cigarettes. *See Liggett Group, Inc. v. Engle*, 853 So. 2d 434, 440 (Fla. 3d Dist. Ct. App. 2003); *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006), *cert. denied*, 552 U.S. 941 (2007), *and reh'g denied*, 552 U.S. 1056 (2007) (referred to collectively as "*Engle*"). The class consisted of all Florida citizens, residents, and their survivors, "who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." *Engle*, 945 So. 2d at 1256. The trial court divided the trial into three phases. During Phase I, the jury concluded that the defendants "placed cigarettes on the market that were defective and unreasonably dangerous." *Id.* at 1257 n.4. The jury also found that the *Engle* defendants were negligent and concealed material information about the health effects or addiction risks of smoking cigarettes (or both). *Id.* During Phase II, the same jury determined that the defendants were liable to three class representatives and awarded those representatives approximately $12.7 million in compensatory damages. *Id.* at 1257. The jury also awarded the entire class punitive damages in the amount of $145 billion. *Id.* The defendants filed an interlocutory appeal, and the Florida Supreme Court reversed the award of punitive damages as premature and excessive and decided to decertify the class going forward. *Id.* at 1263-69, 1265 n8. Although the Florida Supreme Court decided that the case could not continue as a class action, it allowed former class members to file their own individual actions and held that, in those actions, most of the *Engle* Phase I jury findings would be entitled to "res judicata effect." *Id.* at 1269. These individual actions are now commonly known as *Engle*-progeny cases. Hecht's action is one of those cases.

[2] By the time the case went to trial, RJR was the only remaining defendant.

2

harmful effects of smoking cigarettes.[3]    At trial, a dispositive issue was whether Hecht's lawsuit was filed within the applicable four-year statute of limitations.  *See* Fla. Stat. § 95.11(3).   Both parties agreed that, under the relevant statute of limitations, Hecht's claims were untimely if they accrued before May 5, 1990. After considering the evidence, the jury found Hecht's claims to be time-barred, so the district court entered judgment in favor of RJR.

On appeal, Hecht claims the district court erred when it instructed the jury on RJR's statute-of-limitations defense.[4]   He asserts the instruction was an

---

[3]  Hecht brought claims for strict liability, civil conspiracy, fraudulent concealment, negligence, breach of express warranty, and breach of implied warranty.

[4] The statute-of-limitations instruction read as follows:

> The Defendant has raised a statute of limitations defense in this case.  The statute of limitations is simply a provision of the law requiring that suit be commenced in court on certain types of claims within a prescribed period of time.  Otherwise suit is barred or precluded.   In this case, Plaintiff's suit would be barred if Plaintiff knew, or by the exercise of reasonable care should have known before May 5, 1990, both that he had COPD and that there was a reasonable possibility that his COPD was caused by cigarette smoking.  On this timing issue, the Defendant has the burden of proof by a preponderance of the evidence.

> The Defendant does not need to prove that Plaintiff was actually diagnosed with COPD before May 5, 1990 to prevail on its statute of limitations defense.  For purposes of this defense, the critical event is not necessarily when the COPD was actually diagnosed by a physician, but when the COPD first manifested itself.  Plaintiff knew or should have known that there was a reasonable possibility that his COPD was caused by cigarette smoking if the COPD manifested itself to him in a way that supplied some evidence of a causal relationship to cigarette smoking. In making that determination, you may consider what Plaintiff knew prior to May 5, 1990, concerning the health risks of cigarette smoking as they pertained to COPD.

3

"improper comment on the evidence" because it informed the jury that a medical diagnosis was not required for the jury to find that Hecht knew or should have known that he had COPD before the limitations deadline. Hecht also contends the district court erred in advising the jury on the concept of constructive knowledge. Finally, Hecht argues the evidence was insufficient to show that he knew or should have that he had COPD and that there was a reasonable possibility that the disease was caused by smoking cigarettes prior to May 5, 1990. Under the circumstances, Hecht suggests the district court should not have provided the statute-of-limitations instruction to the jury at all.

---

With regard to Plaintiff's knowledge, you are instructed that having the means to obtain knowledge is ordinarily equivalent in law to knowledge. So, if it appears from a preponderance of the evidence in the case that Plaintiff had information that would normally have led a reasonably careful person of the same age, mental capacity, intelligence, training and experience to make inquiry through which such a person would surely learn certain facts, then Plaintiff may be found to have actual knowledge of those facts just as though he had made such inquiry and had actually learned those facts.

You are to decide this issue by a preponderance of the evidence. If a preponderance of the evidence supports the Defendant's position on this issue, your verdict should be for the Defendant on Plaintiff's claim based upon his COPD. However, if a preponderance of the evidence does not support the Defendant's position on this issue, then your verdict on this issue should be for Plaintiff.

4

After careful consideration, we conclude the district court did not err in giving the particular statute-of-limitations instruction to the jury in this case. Accordingly, we affirm.

## I.

"Our review of jury instructions is simultaneously *de novo* and deferential." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014) (citation omitted).  We review jury instructions *de novo* in an effort to determine whether they "misstate the law or mislead the jury to the prejudice of the objecting party[,] but give the district court wide discretion as to the style and wording employed." *Id.*  (internal quotation marks and citation omitted).  We do not disturb a district court's decision with respect to giving a jury instruction unless "we are left with a substantial and ineradicable doubt as to whether the district court properly guided the jury."   *Id.* (internal quotation marks and citation omitted).

## II.

With respect to his first argument, Hecht objects to the portion of the statute-of-limitations instruction that informed the jury that a diagnosis of COPD was not necessary to find that Hecht knew or should have known that he suffered a medical condition caused by smoking cigarettes.  The district court instructed the jury that

5

RJR did not "need to prove that [Hecht] was actually diagnosed with COPD before May 5, 1990 to prevail on its statute of limitations defense."

The court further elaborated, "For purposes of this defense, the critical event is not necessarily when the COPD was actually diagnosed by a physician, but when the COPD first manifested itself." In Hecht's view, these aspects of the instruction had the cumulative effect of unfairly favoring the defense. Hecht also contends the jury instruction ran counter to the Florida Supreme Court's decision in *Carter v. Brown & Williamson Tobacco Corp.*, 778 So. 2d 932 (Fla. 2000). We disagree on both fronts.

Beginning with *Carter*, in that case, the Florida Supreme Court addressed when the statute of limitations begins to run in a products-liability case involving a latent or "creeping" disease, like COPD.[5] *Carter*, 778 So. 2d at 934. There, the court held that the cause of action accrues when "the accumulated effects of the deleterious substance manifest themselves to the claimant in a way which supplies some evidence of a causal relationship to the manufactured product." *Id.* (agreeing with *Copeland*, 447 So. 2d at 926). But contrary to Hecht's assertion, the facts of *Carter* reveal that the diagnosis of a medical condition is not required to trigger the accrual of a claim.

---

[5] A "creeping" disease is "a disease acquired over a period of years as a result of long-term exposure to injurious substances." *Carter*, 778 So.2d at 936-37 (citing *Copeland v. Armstrong Cork Co.*, 447 So. 2d 922, 926 (Fla. 3d Dist. Ct. App. 1984)).

In *Carter*, the court concluded that even though the plaintiff was not diagnosed with lung cancer until February 14, 1991, a jury could reasonably determine that the plaintiff knew or should have known on either January 29, 1991 (when he coughed and spit up blood), or February 4, 1991 (when his doctor told him that he observed a spot on his lung and the spot could be related to cancer or tuberculosis), that the effects of smoking cigarettes "manifested themselves to [the plaintiff] in a way which supplied some evidence of a causal relationship to the cigarettes." *Carter*, 778 So. 2d at 938. In other words, the court made clear that a medical diagnosis—which in *Carter* did not occur until February 14, 1991—is not necessary to trigger the limitations period.

Florida's First District Court of Appeal also concluded that a jury instruction virtually identical to the one provided here was appropriate in *R.J. Reynolds Tobacco Co. v. Jewett*, 106 So. 3d 465 (Fla. 1st Dist. Ct. App. 2012).[6] There, after

---

[6] The proposed jury instruction in *Jewett* read as follows:

> Defendants do not need to prove that Ms. Jewett was actually diagnosed with COPD prior to May 5, 1990, in order to prevail on this defense. For purposes of this defense, the critical event is not when her COPD was actually diagnosed by a physician, but when her COPD first manifested itself.

> Ms. Jewett knew or should have known that there was a reasonable possibility that her COPD was caused by cigarette smoking if her COPD manifested itself to her in a way that supplied some evidence of a causal relationship to cigarette smoking. In making that determination, you may properly consider what Ms. Jewett knew prior to May 5, 1990, concerning the health risks of cigarettes.

7

the trial court refused to give RJR's proposed jury instruction, the appellate court explained that the statute-of-limitations instruction should have been given because it accurately conveyed the ruling in *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006). *Jewett*, 106 So. 2d at 469-70. The *Jewett* court acknowledged that the "critical event is not when an illness was actually *diagnosed* by a physician, but when the disease or condition first manifested itself." *Id.* at 469 (quoting *Engle*, 945 So. 2d at 1276). It also found that the proposed instruction was supported by the facts to be established at trial and was necessary for the jury to properly resolve factual questions regarding the statute-of-limitations defense. *Id*. And significantly, the court specifically noted that, given the principles expressed in *Engle* and *Carter*, the jury "should not have been left unguided in making this legal determination; the standard jury instruction did not adequately cover the legal principles explained in the proposed instructions, leaving the jury to speculate unnecessarily." *Id.* at 470.

We see no material difference between Hecht's case and *Jewett*, and we conclude that the instruction given represented a correct statement of Florida law. The jury instruction correctly advised that a diagnosis of COPD was not needed to begin the limitations clock. *See Carter*, 778 So. 2d at 937 and *Jewett*, 106 So. 3d

---

*Jewett*, 106 So. 3d at 468.

at 469-70. *See also Frazier v. Phillip Morris USA, Inc.*, 89 So. 3d 937, 946 (Fla. 3d Dist. Ct. App. 2012) (limitations period began to run, not when the smoker was diagnosed with COPD, but when symptoms of disease began manifesting itself to degree that the plaintiff knew or should have known of reasonable possibility that symptoms were causally related to smoking.)

Here, in order to determine the date upon which Hecht's claims accrued, the jury had to decide whether Hecht "knew, or reasonably should have known, enough to permit [him] to commence a non-frivolous tort lawsuit against [RJR] on the basis of [his] physical, observable, patent symptoms and effects ("manifestations") before [May 5, 1990]." *Id.* The jury instruction given by the district court allowed the jury to determine whether Hecht was on notice that smoking cigarettes likely caused his illness. And it correctly noted that a diagnosis of COPD was not necessary to begin the limitations period.

We also disagree with Hecht's claim that the instruction was "an improper comment on the evidence." The jury instruction did not comment on the evidence at all. Rather, as we have noted, the instruction assisted the jury in addressing the issue at hand—whether the statute of limitations had run prior to the filing of Hecht's lawsuit. As the court in *Jewett* explained, "Because jury instructions are contextual, some background is necessary" for the jury to determine the limitations issue. *Id.* at 467; *see also id.* at 471 (noting the importance of providing a jury

9

with more, not less, "accurate information about the applicable law so it can properly resolve factual questions."). For these reasons, we find no error.

### III.

Turning to Hecht's second argument, Hecht contends the district court erred when it advised the jury on the concept of constructive knowledge. He claims the court erroneously informed the jury that having the "means to obtain knowledge is ordinarily equivalent in law to knowledge." The district court also instructed the jury that if it appeared from a preponderance of the evidence that Hecht

> had information that would normally have led a reasonably careful person of the same age, mental capacity, intelligence, training and experience to make inquiry through which such a person would surely learn certain facts, then [Hecht] *may be found to have actual knowledge of those facts* just as though he had made such inquiry and had actually learned those facts.

(emphasis added). Hecht contends that in using this additional language, the district court erred in another way in explaining the legal concept of constructive knowledge to the jury. Again, we disagree.

First, Hecht claims this portion of the jury instruction runs afoul of *Carter* because the language suggests that the limitations period began to run when Hecht knew or should have known that he had COPD. He contends that in *Carter*, the Florida Supreme Court rejected the application of this principle—better known

10

as the *Nardone* Rule.[7]  But, in fact, *Carter* makes clear that the *Nardone* Rule was not rejected; it was modified.  *Carter*, 778 So. 2d at 939.[8]

As we have discussed, with respect to creeping diseases such as COPD, the Florida Supreme Court concluded that "the cause of action accrues when the accumulated effects of the deleterious substance manifest themselves to the claimant in a way which supplies some evidence of a *causal relationship* to the manufactured product."  *Id.* at 934 (citation omitted) (emphasis added).  In this way, *Carter* rejected a statute-of-limitations standard that looked to *only* when a plaintiff knew or should have known about his injury.  But it did not completely jettison the manifestation standard.  Instead, the holding in *Carter* requires that the disease manifested itself in a way that would supply evidence of a *causal connection* to the manufactured product.

The jury instruction provided by the district court was appropriate.  It closely tracked the language of *Carter* advising the jury that Hecht "knew or should have known that there was a reasonable possibility that his COPD was caused by cigarette smoking if the COPD manifested itself to him in a way that supplied some evidence of a *causal relationship* to cigarette smoking."  (Emphasis added).

---

[7] *Nardone v. Reynolds*, 333 So. 2d 25 (Fla. 1976).

[8]  When commenting on the *Nardone* Rule, the court in *Carter* noted the knowledge needed to trigger the statute of limitations "means not only knowledge of the injury but *also* knowledge that there is a reasonable possibility that the injury was *caused* by medical malpractice."  *Carter*, 778 So. 2d at 939 (quoting *Tanner v. Hartog*, 618 So. 2d 177, 181 (Fla. 1993)) (emphasis added).

The instruction appropriately incorporated the concept of causation with that of Hecht's knowledge.  The jury instruction also comports with the statutory language of Fla. Stat. § 95.031(2)(b), which states that products-liability actions accrue when "the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence[.]"  *See* Fla. Stat. § 95.031(2)(b).

We similarly reject Hecht's argument that the portion of the jury instruction relating to constructive knowledge improperly shifted the burden of proof to him. The instruction explicitly stated that RJR had the burden of proof on its statute-of-limitations defense.  In fact, it twice specified that RJR bore the burden of proof by a preponderance of the evidence.  Consequently, we disagree with Hecht that the instruction somehow shifted the burden to him to "connect facts, scientific principles and medical conclusions[.]"  The instruction made clear that RJR had the burden of proof with respect to its statute-of-limitations defense.

Finally, Hecht claims the instruction, as it related to his knowledge of his COPD, is not supported by any case law and encourages speculation by the jury. To assist the jury in determining whether Hecht "knew, or by the exercise of reasonable care should have known" before May 5, 1990, that he had COPD that was caused by smoking cigarettes, the district court instructed the jury that "having the means to obtain knowledge is ordinarily equivalent in law to knowledge."  It also instructed that the jury could find the existence of actual knowledge if Hecht

"had information that would normally have led a reasonably careful person of the same age, mental capacity, intelligence, training, and experience to make inquiry . . . [to] learn certain facts." This language was proper.

First, the instruction speaks of information that would have led a "reasonably careful person" to make inquiry. Florida Courts routinely apply this principle in the context of accrual of actions, so we find it appropriate here. *See. e.g.*, *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1519 (11th Cir. 1996) (cause of action accrues "the moment the injured party or a reasonable person in the injured party's situation knew or should have known that the acts complained of caused damage.") (citation omitted).

Second and perhaps most significantly, we previously approved a virtually identical instruction involving the same Florida statute of limitations at issue here. *See Powell v. Radkins*, 506 F.2d 763, 764 & n.2 (5th Cir. 1975).[9] The particular instruction in *Powell* advised the jury, with regard to the plaintiff's knowledge, that "the means of knowledge are ordinarily the equivalent in law to knowledge." *Id.* at 764 n.2. And in *Powell*, we considered appropriate the following language:

> So if it appears from a preponderance of the evidence in the case that the Plaintiff had information which would lead a reasonably careful person of the same age, mental capacity, intelligence, training, and experience to make inquiry through which he would surely learn certain

---

[9] Pursuant to *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981), decisions of the Fifth Circuit handed down before October 1, 1981, are binding on this Court.

13

> facts, then that person may be found to have had actual knowledge of those facts the same as if he had made such inquiry and had actually learned such facts. That is to say, the law will charge a person with notice and knowledge of whatever he would have learned upon making such inquiry as it would have been reasonable to expect that person to make under the circumstances.

*Id.* Indeed, we expressly found the jury was properly instructed on "notice and knowledge in terms of a reasonably careful person of the same age, mental capacity, intelligence, training and experience." *Id.* at 764.

Not only does the instruction given by the district court during Hecht's trial comport with the one our predecessor court approved in *Powell*, it is also in line with the legal definition of "constructive knowledge." Black's Law Dictionary defines constructive knowledge as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Constructive Knowledge*, BLACK'S LAW DICTIONARY (10th ed. 2014). Here, the instruction's language regarding constructive knowledge tracks this concept by referencing information that a "reasonably careful person" would have learned.

Third, contrary to Hecht's contention, the jury instruction on constructive knowledge does not lower the bar that RJR needed to clear in order to prevail on its statute-of-limitations affirmative defense. The instruction makes clear that RJR was required to do more than merely suggest that Hecht had knowledge of his COPD prior to May 5, 1990. Rather, the instruction, when read as a whole,

adequately addresses the fact that evidence would need to show that Hecht "had information that would normally have led a reasonably careful person . . . to make inquiry . . . ."  In this way, the constructive-knowledge instruction comports with the holdings of *Frazier* and *R.J. Reynolds Tobacco Co. v. Ciccone,* 190 So. 3d 1028 (Fla. 2016).

In *Frazier*, Florida's Third District Court of Appeal found the issue in a statute-of-limitations context to be whether the plaintiff "knew, *or reasonably should have known*, enough to permit her to commence a non-frivolous tort lawsuit against the [defendants] on the basis of those physical, observable, patent symptoms and effects ("manifestations") before [May 5, 1990]."  *Frazier*, 89 So. 3d at 946.  So too in *Ciccone*, the Florida Supreme Court noted that the applicable statute of limitations runs "from the date that the facts giving rise to the cause of action were discovered, *or should have been discovered with the exercise of due diligence*."  *Ciccone*, 190 So. 3d at 1038 (citation omitted) (emphasis added). *Ciccone* also speaks not of actual facts known by a plaintiff but the requirement that a "reasonable plaintiff" know of the existence of a cause of action.  *Id.*

For all of these reasons, the district court did not err when it advised the jury with respect to constructive knowledge.  The instruction accurately reflected the law and we are not left with "a substantial and ineradicable doubt" as to whether the district court properly guided the jury.  *State Farm Fire & Cas. Co. v. Silver*

15

*Star Health and Rehab.*, 739 F.3d 579, 585 (11th Cir. 2013).  And even if the district court had erred in giving the constructive-knowledge instruction—a proposition with which we disagree—any such error was harmless because, as we discuss in Section IV below, the evidence suggested that Hecht *actually* knew that he had COPD before May 1990 and that the disease was caused by smoking cigarettes.

## IV.

Finally, Hecht contends that regardless of the particular language of the instruction, RJR failed to provide a sufficient evidentiary basis to justify giving the statute-of-limitations instruction to the jury in the first place.  More specifically, he claims RJR presented no direct evidence that Hecht knew or could have known he had COPD before the critical date of May 5, 1990.  In Hecht's view, RJR presented only speculative factual evidence to support its statute-of-limitations defense.

At the outset, RJR claims that Hecht waived this argument because he failed to object to the jury instruction on the basis of sufficiency of evidence at trial.  Instead, Hecht's objections to the statute-of-limitations instruction dealt only with the substantive legal arguments regarding the particular language in the instruction.

We agree.  Hecht never objected to the jury instruction on the basis that RJR had failed to present evidence supporting it.  Although Hecht moved for judgment as a matter of law on the statute-of-limitations defense based on a lack of evidence, the motion was not directed to giving the jury instruction.  And even if the motion for judgment as a matter of law could somehow be construed as an objection to the jury instruction, Hecht made the motion only after the jury had reached a verdict.  Where a party was informed of a proposed instruction—as was the case here— Rule 51(b), Fed. R. Civ. P., requires that party to object to the jury instruction "*before* the instructions and arguments are delivered."  (Emphasis added).

But even if Hecht had not waived his argument, it would make no difference to the outcome.  Florida Courts have made clear that the determination of whether a statute-of-limitations defense has been met in *Engle* progeny cases is an issue of fact for the jury.  *Carter*, 778 So. 2d at 937 ("the question of when the statute of limitations begins to run in this type of case is generally treated as a fact question for a jury to resolve. . . .") (internal quotation marks and citation omitted).  RJR was entitled to have the district court advise the jury of its theory of defense as long as it was supported by the evidence.  *See Japhe v. A-T-O, Inc.*, 481 F.2d 366, 371 (5th Cir. 1973); *see also United States v. Arias*, 431 F.3d 1327, 1335 (11th Cir. 2005) (finding district court did not err by instructing jury on defense where the evidence supported defense); *United States v. Nur*, 799 F.3d 155, 158 (1st Cir.

17

2015) (to determine whether the evidence supports the giving of a jury instruction, we do not "weigh the evidence, but merely inquire into its sufficiency.") (citation omitted). Here, RJR presented sufficient evidence during trial that Hecht knew or should have known before May 5, 1990, that he had COPD and that his smoking caused his illness.

As an initial matter, the record supports a jury finding that Hecht experienced significant shortness of breath years before May 1990. And as Hecht's own expert witness testified, "exertional dyspnea, or shortness of breath on exertion, can be a hallmark symptom of COPD[.]" In fact, Hecht's expert agreed it was "the most common symptom."

Most tellingly, on cross-examination, Hecht acknowledged that he applied for Social Security disability benefits on August 19, 1987, and was granted benefits in July 1988. A verified fact worksheet filed during litigation—and signed under penalty of perjury—reveals Hecht sought disability benefits because he was "[u]nable to breathe."[10] Although Hecht claimed that he applied for disability benefits due to his post-polio condition and not for his breathing difficulties, the jury was entitled to disbelieve him. This is so especially in light of the evidence showing that Hecht applied for Social Security disability benefits related to his

---

[10] While the worksheet identified Hecht's application for disability benefits as approximately 1995, during cross-examination, Hecht admitted that he filed for disability benefits in the late 1980s—August 19, 19987, to be precise.

18

breathing difficulties years before May 1990. The jury was presented with a classic credibility determination and having observed Hecht during trial (including various times where his testimony was impeached), the jury was well within its purview to disbelieve his testimony that he sought disability benefits for post-polio syndrome and not his inability to breathe. *See Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011) (the credibility of a witness is in the province of the factfinder).

Other evidence in the record supports the conclusion that Hecht received disability benefits because of his breathing difficulties. Significantly, a hospital record from September 1, 2005, noted that Hecht's "Social history [was] remarkable for being on disability *due to his lung problems*." (emphasis added). This statement, together with the other evidence already described, would have allowed the jury to conclude that Hecht sought disability benefits in 1987 due to his "lung problems" and inability to breathe. And clearly, if Hecht's lung problems rose to the level where he sought disability payments, a jury could naturally have concluded he knew or should have known he had COPD.

Aside from the application for disability benefits, other evidence supports a finding that Hecht suffered from significant breathing difficulties prior to May1990. In a letter dated June 12, 1997, Hecht's pulmonologist, Dr. Kishwar Husain wrote to Hecht's general practitioner, Pam Juba, M.D., stating "As you are

19

well aware, Mr. Hecht has significant exertional dyspnea *for the past ten years*, worse over the past year and a half with significant wheezing without cough or hemoptysis." (emphasis added). Dr. Husain wrote the letter to Dr. Juba in an effort to set forth Dr. Husain's "evaluation of [Hecht's] COPD." This evidence—that Hecht suffered from significant exertional dyspnea for a decade—also suggests that Hecht suffered shortness of breath severe enough to file a claim for disability in 1987. The letter specifically noted "significant" shortness of breath for the ten years before 1997 (1987—the precise year that Hecht applied for disability benefits).

Other records also support a finding that Hecht suffered from significant breathing problems prior to May 1990. For example, discharge records from Hecht's hospital stay in May to June 1993 noted that Hecht had a "[h]istory of tobacco abuse with chronic obstructive pulmonary disease." This reference to a "history" of COPD in 1993 tends to negate Hecht's trial testimony that he developed COPD in the mid to late 1990s. While this evidence alone might not support a finding that Hecht knew or should have known he had COPD, it bolsters the other evidence we have already discussed.

Finally, the evidence presented supports a finding that Hecht likely knew his health problems were due to tobacco use. First, during trial, Hecht's expert acknowledged that when Hecht was a teenager, the Surgeon General had issued a

report concluding that cigarette smoking caused COPD.  Second, while Hecht testified that he was unaware of a connection between smoking cigarettes and COPD until his diagnosis, RJR impeached Hecht's testimony.  Responses provided by Hecht during his deposition revealed, before Hecht developed his illness, his mother had been diagnosed with COPD, and she told Hecht her COPD was caused by smoking cigarettes.  Hecht also acknowledged that over the years, he had seen various warning labels on cigarette packages indicating the dangers of smoking. Finally, Hecht's expert admitted during trial, when a smoker presents to a doctor with shortness of breath, the medical standard of care—since at least the early 1980s—requires doctors to (1) advise the patient that he is likely to have or to develop COPD; and (2) counsel the patient to stop smoking.

In sum, ample evidence supported the district court's instruction to the jury on RJR's statute-of-limitations defense.  The record supports the jury's conclusion that Hecht knew or should have known before May 5, 1990, that he had COPD and that a reasonable possibility existed that his condition was caused by smoking cigarettes.  The district court did not abuse its discretion when it instructed the jury on the statute-of-limitations defense.

## V.

For these reasons, the district court did not err in giving the statute-of-limitations instruction to the jury in this case.  We also conclude that the

21

instruction appropriately advised the jury on the concept of constructive knowledge, and it correctly noted that a diagnosis of COPD was not necessary to begin the limitations period.  Accordingly, we affirm.

   **AFFIRMED**.